**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

Randal R. Steen,                  )

                            )

             Petitioner,       )       **REPORT AND RECOMMENDATION**

                            )

     vs.                      )

                            )

Robyn T. Schmalenberger,     )       Case No. 1:07-cv-094

                            )

             Respondent.    )

_____

Before the court is Randal Steen's petition for habeas relief pursuant to 28 U.S.C. § 2254 and Respondent's motion to dismiss.  For the reasons set forth below, the undersigned recommends the petition be denied.

I.     **BACKGROUND**

    A.     **Steen's arrest, trial, and conviction**

On the afternoon of January 16, 2002, Burleigh County Sheriff's Deputy Dan Wentz was attempting to locate Steen in order to serve him with civil process and was advised by his daughter-in-law that he was staying in Room 55 at the NoDak Motel in Bismarck.  Wentz contacted the motel and, according to his testimony at trial, "confirmed that Randy was staying at the NoDak" in Room 55.  (Ex. 4, p. 30-31).[1]  Wentz then contacted Deputy Banker in the criminal warrants division to see if there were any outstanding criminal warrants for Steen and was advised there were.

Wentz, Banker, and a third Sheriff's deputy proceeded to the NoDak Motel where they knocked on the door to Room 55.  According to the State's evidence, Steen peered out the window,

_____

[1]  Unless otherwise indicated, all of the exhibit references are to the state-court records produced by the Respondent, which are filed at Docket No. 21.

and, after a short delay during which one of the officers testified he overhead the clinking of glass, opened the door in a partial state of undress.  (Ex. 4, pp. 32, 64, 66-67, 144, 156, 160).  Steen then retreated into the room to put on his clothes.  The Sheriff's deputies followed and cuffed him.  A safety sweep of the main room and bathroom revealed that no other persons were present.

Upon entry into the room, the officers observed a roach clip and a plastic bag containing material thought to be marijuana on a table near the bed.  The officers asked permission to conduct a search and were refused.  (Ex. 4, pp. 48, 66-69, 147).

Steen was kept at the motel room in cuffs while the officers obtained a search warrant.  After the warrant arrived, the officers asked Steen whether there was anything in room that was hazardous. Steen  initially stated "no," but then pointed toward an open cabinet below which was a jacket in a lump covering a number of items used for manufacturing methamphetamine ("meth").  (Ex. 4, pp. 71-72, 177-178, 181).  The search of the entire room uncovered:  (1) meth in trace amounts in a plastic bag; (2) paraphernalia for consuming meth, including a hollowed-out light bulb, needles, spoons, and a pen tube; and (3) a number of utensils commonly associated with meth manufacturing, including glass and plastic bottles, two glass cooking pans, three plastic funnels, coffee filters, and a "turkey baster."  A number of these utensils were coated with a white powdery residue or film that later tested positive for meth and/or chemicals used for manufacturing meth, including CMP, ephedrine, and organic solvent.  (Ex. 4, pp. 176-196, 222-240).

Steen was charged with one count of manufacturing meth, one count of possession of meth, and two counts of possession of drug paraphernalia.  The trial took place on October 1-2, 2002. Steen did not take the stand and no other witnesses were called in his defense.  (Ex. 4, p. 254).

2

Because Steen was found alone in the motel room with all of the incriminating drug evidence, Steen's counsel focused most of his attention at trial on the manufacturing count, which carried the most severe sentence and for which there was no direct evidence of Steen's involvement. (Ex. 4; Ex. 7, pp. 26-27).  During the cross-examination of the State's witness, he brought out the weaknesses in the State's case, particularly as to the manufacturing charge, including the following:

- The fact there were no eyewitnesses, fingerprints, or other direct evidence proving that Steen had been involved in the manufacturing of meth, as opposed to being found in the room containing meth-making utensils. (Ex. 4, pp. 197, 215-216).

- Steen's hearsay statements to the officers that others had been staying in the room, including his son.  (Ex. 4, pp. 204-205).

- The fact that the law enforcement officials ended their investigation with Steen's arrest and the lab analysis of the recovered evidence and did conduct any further investigation (*e.g.*, interviewing other persons or fingerprinting the utensils recovered during the search) to determine whether others had access to room and were involved in the suspected drug activity.  (Ex. 4, pp. 204, 215-216).

- Evidence supporting the arguments that any meth manufacturing was not recent and could have been done at other locations by others, including: (1) the absence of any discernable odor of ongoing manufacturing in the room when the officers arrived; (2) the fact Steen appeared to have been sleeping and he did not appear to be under the influence of meth; (3) the fact the search failed to uncover the presence of lithium and anhydrous ammonia, both essential ingredients for the completion of manufacturing meth; (4) the absence of any packaging for, or the raw form of,

3

ephedrine, another key ingredient, which showed up only in the lab analysis of the residue on the equipment in trace amounts, (5) the fact the meth-making utensils found in the room were in a stacked or bagged condition; and (6) the absence of any measurable quantities of meth.  (Ex. 4, pp. 54, 66-67, 144, 153-159, 194-195, 199, 207-208, 211-212).

During final argument, Steen's counsel emphasized these weaknesses in the context of the State's burden of needing to prove its case beyond a reasonable doubt.  He argued that the prosecution  had not eliminated other reasonable possibilities, including that the meth-making utensils belonged to someone else and were simply being stored in the room, and that Steen being found  in the room with  the meth-making utensils was not enough to prove possession, much less manufacturing.   (Ex. 4, pp. 271-283).

The evidence that the prosecutor relied upon to overcome these points included:

• Steen's daughter-in-law advising the authorities that she believed Steen was staying at the NoDak Motel, the Motel confirming this fact, and Steen being  found alone in the room in a partial state of undress with only one of the two beds appearing to have been slept in - evidence that the prosecutor characterized as the room being "registered" to Steen, but which, in any event, suggested Steen was a resident and not a mere visitor. (Ex. 4, pp. 28, 31, 37,  52, 66-67, 144).

• The lack of evidence suggesting that others were associated with the room, apart from Steen's statement to the law enforcement officers that others were staying there. The prosecutor highlighted this fact in final argument, which was an indirect

comment on Steen's failure to provide affirmative proof of his non-involvement. (Ex. 4, pp. 257-258, 270, 289-290).

• The testimony of the State's drug expert that the absence of lithium and anhydrous ammonia required for completion of the meth manufacturing and the state of the physical evidence was consistent (but not exclusively so) with the manufacturing being done in stages and, in this case, only the first stage was completed. (Ex. 4, pp. 193-194, 211-212).

• The evidence of Steen's awareness of the presence of the meth-making utensils when the officers arrived, which included (1) the testimony of one of the officers that he overhead the clinking of glass before Steen opened the door, (2) a number of the meth-making items were found underneath some clothing, suggesting Steen had attempted to conceal the meth-making utensils, and (3) Steen's gesture toward where a number of the meth-manufacturing utensils were located after the officers asked about hazardous materials. (Ex. 4, pp. 64, 71-72, 160).

After deliberating for an hour and twenty minutes, the jury found Steen guilty on all four charges. (Ex. 4, p. 292). Steen was sentenced on December 4, 2002, to fifteen years' imprisonment on the manufacturing count (a Class A felony punishable up to twenty years' imprisonment) and five years' imprisonment on the remaining counts (all Class C felonies punishable up to five years' imprisonment) to run concurrently with his sentence on the manufacturing count. ( Ex. 3).

Given the passage of time, it appears Steen is imprisoned now only on the manufacturing count.

### B.       Steen's first petition for post-conviction relief

Steen filed a notice of appeal to the North Dakota Supreme Court on December 1, 2002. While his direct appeal was pending, Steen filed his first application for state post-conviction relief on July 2, 2003, which is a separate civil proceeding under North Dakota law. The statement of claims in the petition was somewhat confused.   There were allegations of ineffective assistance of counsel followed by allegations of direct constitutional violation, but with a further explanatory statement for each stating that the issue raised could not be the subject of direct appeal because counsel was ineffective.  (Ex. 5).   Counsel was appointed and two addendums raising additional claims of ineffective assistance of counsel were filed. (Exs. 5B & 5C).

On December 19, 2003, the state district court conducted an evidentiary hearing on the petition for post-conviction relief.[2]  At the hearing, Steen was represented by the same attorney appointed by the court to represent him on his pending direct appeal.   Steen testified at the hearing and the State called his trial attorney as its witness.  (Ex. 7).

At the conclusion of the hearing, the court noted that the trial transcript (which had already been filed with the North Dakota Supreme Court in support of Steen's direct appeal) had not been filed with the district court as part of the post-conviction proceeding docket.  Steen's counsel stated he would file it on the following Monday.  (Ex. 4, pp. 1 and court' reporter's certificate; Ex. 7, pp. 38-39).  However, he failed to do so.

On January 4, 2004, the district court issued its decision denying Steen's petition for post-conviction relief.   In its memorandum opinion, the court noted that the transcript had not been filed

---

[2]   The cover sheet for the transcript of the hearing bears a date of December 19, 2002.  However, this was obviously a typographical error given the sequence of events.  The correct date of December 19, 2003, is reflected on page 3 of the transcript.  (Ex. 7).

and concluded, among other things, that Steen had failed to provide sufficient proof of prejudice with respect to his claims of ineffective assistance of counsel based on the limited record before the court. (Ex. 8).

Steen's post-conviction counsel then filed a motion for reconsideration dated February 2, 2004, but, again, failed to file the trial transcript. (Ex. 9). The district court denied the motion for reconsideration, once more commenting on counsel's failure to file the trial transcript and again ruling that Steen had failed to provide proof of prejudice with respect to his ineffective assistance of counsel claims based upon the record before the court. (Ex. 10).

**C.    Steen's consolidated appeal from the judgment of conviction and from denial of his first petition for post-conviction relief**

Steen's attorney filed a notice of appeal from the district court's denial of his first petition for post-conviction relief. This appeal was consolidated with Steen's still pending direct appeal from the judgment of conviction. At Steen's request, his counsel was allowed to withdraw and Steen undertook to represent himself in the consolidated appeal. (Exs. 12A & 29). Steen claims he was forced to represent himself because his counsel had already proved to be incompetent. The record is devoid of any indication, however, that he made a request for new court-appointed counsel.

In his consolidated appeal brief filed with the North Dakota Supreme Court, Steen, who by that time was proceeding *pro se*, raised the following claims, the numbering and wording of which are taken from his brief:

I.      The court erroneously denied appellant relief through post conviction based on warrantless entry, search, and arrest.

I.a)    Whether appellant's 4th Amendment rights were violated by: Police making a warrantless entry, searching prior to having a search warrant, and arrest without a warrant.

I.b)     Whether appellant's 6th Amendment rights were violated by (ineffective assistance of counsel) for: Counsel's failure to discover that alleged failure to appear arrest warrants did not exist until two days after Appellant's arrest.

I.c)     Whether appellants 6th Amendment rights were violated (by ineffective assistance of counsel) for: Counsel's failure to file Motion to have all evidence in violation of the 4th Amendment suppressed as "fruit of the poisonous tree."

I.d)     Whether appellant's 14th Amendment rights were violated because of due process:  Arrested for failure to appear prior to warrants being issued.

II.      The court erroneously denied the appellant relief through post conviction based on ineffective assistance of counsel.

II.a)    Appellant's 6th Amendment rights were violated by: Counsel's failure to object to Appellant being tried in prison attire on first day of trial and in jail garb the second day of trial.

II.a.1)  Appellant's 14th Amendment (Due Process) rights were violated by : Being compelled to wear prison attire on first day of jury trial and jail garb on second day of trial.  Appellant was denied due process and a fair trial, as this prejudiced the jury.

II.b)    Appellant's 6th Amendment rights were violated by: Counsel's failure to object to the numerous statements that Appellant was wanted by law enforcement for the alleged failure to appear arrest warrants.

II.b.1)  Appellant's 14th Amendment (Due Process) rights were violated by: Appellant was denied due process and a fair trial by the many comments that he was wanted by law enforcement for alleged failure to appear arrest warrants.  This prejudiced the jury.

II.c)    Appellant's 6th Amendment rights were violated by: Counsel's failure to object to State lab being contaminated, which makes the integrity of the samples questionable.

II.c.1)  Appellant's 14th Amendment (Due Process) rights were violated by: Appellant's due process and right to a fair trial was violated by State Lab contamination, which makes the integrity of the samples questionable.

II.d)    Appellant's 6th Amendment rights were violated by: Counsel's failure to object or reject jurors that absolutely did not want to be seated on jury.

II.d.1.)        Appellant's 14th Amendment (Due Process) rights were violated by: Appellant was denied due process and a fair trial by Counsel's failure to object to jurors that did not want to be seated on jury.

II.e)    Appellant's 6th Amendment rights were violated by: Counsel's failure to present any witnesses in Appellant's behalf at the jury trial.

II.e.1)  Appellant's 14th Amendment (Due Process) rights were violated by: Appellant was denied due process and a fair trial by Counsel's failure to present any witnesses in Appellant's behalf.

II.f)    Appellant's 6th Amendment rights were violated by: Counsel's failure to take appropriate measure and put forward (Motion in limine) in regard to certain items of evidence and Miranda violation.

II.f1)   Appellant's 14th Amendment (Due Process) rights were violated by: Appellant was denied due process and a fair trial by Counsel's failure to take appropriate measure with (Motions in limine).

II.g)    Appellant's 6th Amendment rights were violated by: Counsel's failure to object to Prosecutor's inappropriate comments to jury and State's failure to prove Motel room was rented by Appellant.

II.g.1)  Appellant's 14th Amendment (Due Process) rights were violated by: Appellant was denied due process and a fair trial by Counsel's failure to object to Prosecutor's inappropriate comments to jury and State's failure to prove Motel room was rented by Appellant.

(Ex. 12A, pp. vi-vii).

On December 17, 2004, the North Dakota Supreme Court affirmed Steen's conviction and denied his application for post-conviction relief.  State v. Steen, 2004 ND 228, 690 N.W.2d 239. In its opinion, the court characterized Steen's arguments on appeal as relating only to his claims of ineffective assistance of counsel that were the subject of his petition for post-conviction relief. 2004 ND 228 at ¶ 6.  The court then addressed Steen's claims of ineffective assistance related to his alleged wrongful arrest, the resulting search of his motel room, and his appearing at trial in jail attire.  At the conclusion of its opinion, the court stated that the remaining issues and arguments raised by

the parties (including, presumably, his other claims of ineffective assistance) were without merit or were unnecessary for the court's decision.  Id. at ¶ 21.

  **D.**  **Steen's motion for new trial and appeal from the denial of that motion**

  In May 2005, Steen filed a motion for new trial pursuant to N.D. R. Crim. P. 33, claiming he was innocent and that the interests of justice required he be granted a new trial.  (Ex. 14).  In his moving papers, Steen claimed that his oldest son had brought the "manufacturing items" into the motel room while he was asleep.  He contended that he wanted his attorney to subpoena his girlfriend and youngest son to testify at trial to his non-involvement with the drug paraphernalia, but that he was persuaded by his attorney not to because his attorney had claimed it would only lead to the State charging his sons and that he could beat the charges.  He also claimed he was of the belief that, even if convicted, he would  be sentenced to only a few years in prison - not the  fifteen years he was given - and that this motivated him not to pursue this defense and keep his older son out of trouble. (Ex. 14).

   In support of his motion, Steen submitted three affidavits, one each from his two sons and one from his girlfriend.  Joshua, the oldest son, claimed in his affidavit that there was nothing illegal in the motel room when his father fell asleep the evening prior to his arrest, that he and his younger brother had brought the "items"(presumably the drug paraphernalia) into the motel room after their father and his girlfriend had fallen asleep, and that his father's attorney had advised his father to keep quiet, otherwise the State would charge all three, *i.e*., Steen and his two sons.  (Ex. 14A).  The younger son, Jacob, claimed in his affidavit that he was with his brother Joshua when Joshua brought the "manufacturing items" into the room after their dad had fallen asleep. (Ex. 14B).  In the third affidavit, Steen's girlfriend stated that she had stayed in the room the evening prior to Steen's

arrest, but had left for work earlier that morning.  She stated that Steen's two sons were in the room

that evening when she fell asleep and that there was nothing illegal in the room at that time.  She

stated the two boys were not around when she awoke and she was unaware that they had left "illegal

items used for manufacturing" in the room during the night.  (Ex. 14B).

The district court denied the motion for new trial, stating the motion was premised upon

evidence known at the time of trial that Steen elected not to present and that this was not a

permissible ground for granting a new trial under Rule 33.  (Ex. 16).  Steen appealed, and the North

Dakota Supreme Court summarily affirmed on appeal, stating that the trial court had not abused its

discretion in denying Steen's request for a new trial based on the claim he was actually innocent.

Steen v. State, 2005 ND 199, 736 N.W.2d 457 (Table), 2005 WL 3194556.

### E. Steen's second petition for post-conviction relief and subsequent appeal

Steen next filed a second petition for state post-conviction relief in July of 2006 in which he

raised the following issues:

I.     The State failed to bear its burden to prove manufacturing, venue, time, and
       the actor who did it.

II.    The State failed to bear its burden to prove paraphernalia used to inhale or
       ingest methamphetamine.

III.   The State failed to bear its burden to prove that Steen had the intent to use the
       paraphernalia.

IV.    The State failed to bear its burden to prove possession of the
       methamphetamine.

V.     The State failed to bear its burden to prove all the elements of possession,
       that Steen possessed the items found in the motel room.

VI.    Constructive possession is not forbidden.

VII.   The definition for possession is insufficient to state an offense.

VIII.   Steen was compelled to be a witness against himself.

IX.   Steen had ineffective assistance of counsel [including trial, appellate, and post-conviction relief counsel].

(Ex. 18).  In response, the State asserted the statutory defenses of res judicata and misuse of process.

(Ex. 19).   Believing the State's response to be inadequate, Steen, who was representing himself, moved for judgment on the pleadings and for summary disposition.  In his moving papers, Steen claimed that "a default evidentiary hearing is not needed because the State confessed to the merits of the post-conviction application."  The trial court denied the second petition for post-conviction relief, stating the claims had already been addressed in prior proceedings. (Ex. 22).

Steen appealed the denial of his second petition for post-conviction relief.  On July 25, 2007, the North Dakota Supreme Court affirmed the denial based on grounds of res judicata and misuse of process.  Steen v. State, 2007 ND 123, 736 N.W.2d 457.

**F.   Steen's federal habeas claims**

Steen next filed his § 2254 petition with this court asserting the following claims:

1.   Police making a warrantless entry, searching prior to having a search warrant, and arrest without a warrant.

2.   Counsel's failure to discover that alleged failure to appear arrest warrants did not exist until two days after Appellant's arrest.

3.   Counsel's failure to file motion to have all evidence in violation of the 4th amendment suppressed as "fruit of the poisonous tree."

4.   Violation of Due Process: Arrested for failure to appear prior to warrants being issued.

5.   Counsel's failure to object to Appellant being tried in prison attire on first day of trial and in jail garb second day of trial.

6.   Violation of due process: Being compelled to wear prison attire on first day of jury trial and jail garb on second day of trial.

7.    Counsel's failure to object to the numerous statements that Appellant was wanted by law enforcement for the alleged failure to appear warrants.

8.    Denied due process and a fair trial by the many comments that he was wanted by law enforcement authorities for alleged failure to appear arrest warrants.

9.    Counsel's failure to object to State lab being contaminated, which makes the integrity of samples questionable.

10.   Due process and fair trial was violated by State lab contamination, which makes the integrity of the samples questionable.

11.   Counsel's failure to object or reject jurors that absolutely did not want to be seated on jury.

12.   Denied due process and a fair trial by Counsel's failure to object to jurors that did not want to be seated on jury.

13.   Counsel's failure to present any witnesses in Appellant's behalf at the jury trial.

14.   Steen was denied due process and a fair trial by Counsel's failure to present any witnesses.

15.   Counsel's failure to take appropriate measure and put forward (Motion in limine) in regard to certain evidence and Miranda violation.

16.   Denied due process and a fair trial by Counsel's failure to take appropriate measure with (Motions in limine).  ("Steen was questioned while in hand cuffs, without the benefit of Miranda warnings.  Counsel failed to file motion in limine to exclude certain items and parts of conversations.")

17.   Counsel's failure to object to Prosecutor's inappropriate comments.

18.   Denied due process and a fair trial by Prosecutor's inappropriate comments to jury.

19.   Actual innocence.

20.   The State failed to bear its burden to prove manufacturing, venue, time, and the actor who did it.

21.   The State failed to bear its burden to prove paraphernalia used to inhale or ingest methamphetamine.

22.     The State failed to bear its burden to prove that Steen had the intent to use paraphernalia.

23.     The State failed to bear its burden to prove possession of methamphetamine.

24.     The State failed to bear its burden to prove all of the elements of possession, that Steen possessed the items found in the motel room.

25.     Constructive possession is not forbidden.

26.     The definition of possession is insufficient to state an offense.

27      Steen was compelled to be a witness against himself.

28.     Ineffective assistance at trial and appellate counsel. And, he had ineffective assistance of counsel on his first-post conviction.

The Respondent has moved to dismiss Steen's § 2254 petition.  The briefing has been completed, and the motion is ripe for the court's consideration.

## II.     LAW GOVERNING FEDERAL HABEAS REVIEW

### A.     Scope of Review

Under 28 U.S.C. § 2254, a federal court may review state-court criminal proceedings to determine whether a person is being held in violation of the United States Constitution or other federal law.  In most cases, this review is limited because, as a matter of federalism and comity, the primary responsibility for ensuring compliance with federal law in state-court criminal proceedings rests with the state courts.

In keeping with this policy, § 2254(d) limits federal-court review of cases where the state courts have addressed the federal claims on the merits to instances when a person is being held in custody pursuant to a state-court decision that (1) is directly contrary to established federal law as enunciated by the United States Supreme Court, (2) is an objectively unreasonable application of Supreme Court precedent, or (3) is based on an unreasonable determination of the facts based on the

evidence presented in the state-court proceeding.  See 28 U.S.C. § 2254(d); see generally Woodford

v. Visciotti, 537 U.S. 19, 26-27 (2002 (per curiam); Williams v. Taylor, 529 U.S. 362, 399-413

(2000); Williams v. Taylor, 529 U.S. 420, 436-437 (2000).  This highly deferential standard of

review under § 2254(d) is often referred to as "AEDPA deference" because it was enacted by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  E.g.  Pederson v. Fabian, 491

F.3d 816, 824-825 (8th Cir. 2007); see generally Renico v. Lett, 559 U.S. __, 130 S.Ct. 1855, 1862

& n.1 (2010).

Also, in keeping with the policy of placing primary responsibility for the enforcement of

federal rights upon the state courts, § 2254 imposes a number of additional rules and procedures to

limit federal-court "retrials" of state-court criminal proceedings under the guise of federal habeas

corpus.  See Bell v. Cone, 535 U.S. 685, 693 (2003).  For example, subdivisions (b) & (c) of § 2254

impose the long-standing requirement that federal courts may only consider habeas claims that have

first been exhausted using available state-law procedures.  Subdivision (e)(1) provides that state-

court factual findings carry a presumption of correctness, which can only be rebutted by clear and

convincing evidence.[3]  Finally, subdivision (e)(2) requires that the petitioner develop the factual

bases for the federal claims in state court by limiting the availability of federal evidentiary hearings

to those situations in which the federal claims rely upon a new, retroactive law or are based on facts

that could not have been previously discovered by the exercise of due diligence.

**B.      Exhaustion requirements**

---

[3]  The Supreme Court has not finally resolved the relationship between § 2254(d)(2) and (e)(1) in terms of the
deference to be accorded state-court findings of fact for challenges based upon § 2254 (d)(2).   Wood v. Allen, __
U.S.__, 130 S.Ct. 841, 848-849 & n.1 (2010) (discussing the differing positions taken by the federal circuit courts).

It is well established that the exhaustion doctrine, codified at 28 U.S.C. §§ 2254(b)-(c), precludes granting habeas relief when state-court remedies have not been properly exhausted.  E.g., Rhines v. Weber, 544 U.S. 269, 274 (2005); Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001). Proper exhaustion has two components:  First, the claim must be "fairly presented," either by referring to the particular federal constitutional right or citing to a state or federal case that raises the pertinent constitutional issue.  Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005); Gentry v. Lansdown, 175 F.3d 1082, 1083 (8th Cir. 1999) ("A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits.").   Second,  the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addition, there are several other aspects of the exhaustion requirement that are important. First, the exhaustion requirement is satisfied if there are no state-court remedies available and exhaustion would be futile.  E.g., Armstrong v. Iowa, 418 F.3d 924, 926-927 (8th Cir. 2005). Second, a petitioner is prohibited from proceeding with a "mixed petition" of exhausted and unexhausted claims by the Supreme Court's decision in Rose v. Lundy, 455 U.S. 509 (1982).  See also Rhines v. Weber, 544 U.S. at 273-274.  Third, § 2254(b)(2) authorizes the court to deny a claim on the merits notwithstanding a failure to exhaust.  E.g., Gringas v. Weber, 543 F.3d 1001,1003 (8th Cir. 2008).

### C.    Procedural default

A federal district court is precluded from substantively considering a habeas claim that has been procedurally defaulted at the state level on independent and adequate state grounds.  E.g.,

16

Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  State procedural grounds are independent and adequate if they are firmly established, readily ascertainable, and regularly followed.  Barnett v. Roper, 541 F.3d 804, 808 (8th Cir. 2008); Franklin v. Luebbers, 494 F.3d 744, 750 (8th Cir. 2007). They must also further a legitimate state interest and not be applied in an exorbitant manner.  Barnett v. Roper, supra.

The rule barring procedurally-defaulted claims is nearly absolute. Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007).   The only exceptions are when the criteria for imposing the rule have not been satisfied or the rare instances when the petitioner is able to meet strict cause and prejudice or actual innocence standards.   E.g., Dretke v. Haley, 541 U.S. 386, 392-393 (2004);  Hunt v. Houston, 563 F.3d 695, 703-704 & n.2 (8th Cir. 2009).

## III.   ANALYSIS

### A.   Steen's freestanding constitutional claims generally

For most of the issues that Steen raises, he makes a freestanding claim of a constitutional violation and a corresponding claim for ineffective assistance of counsel.  As noted above, the North Dakota Supreme Court concluded that the issues Steen raised in his consolidated appeal related only to his claims of ineffective assistance of counsel raised in his petition for post-conviction relief. The court stated the following:

> [¶ 6] Although Steen filed appeals from both the criminal judgment and the order denying his motion for post-conviction relief, his arguments on appeal all relate solely to the post-conviction proceeding. Accordingly, we address his arguments in that context.
> * * * *
> [¶ 21] We have considered the remaining issues and arguments raised by the parties. They are either without merit or unnecessary to our decision. The judgment of conviction and the order denying the motion for post-conviction relief are affirmed.

17

State v. Steen, 2004 ND 228 at ¶¶ 6 & 21.

      While not entirely free from doubt, it appears that Steen failed to properly raise the freestanding claims of constitutional violation that he makes here before the North Dakota Supreme Court.[4]  And, if that is the case, then claims have been procedurally defaulted on the independent state law ground of misuse of process discussed later with respect Claims 20 through 27, and the court is precluded from granting habeas relief with respect to the claims, assuming the procedural default was fairly enforced and Steen is unable to prove the applicability of one of the narrow exceptions for granting relief from the default.   See, e.g., Turnage v. Fabian, 606 F.3d 933, 940-943 (8th Cir. 2010); Barnett v. Roper, 541 F.3d at 808; Franklin v. Luebbers, 494 F.3d at 750. However, to avoid needless argument over what the North Dakota Supreme Court decided and the fairness of the imposition of any procedural default, the freestanding claims will be addressed on the merits under the limited authority granted by 28 U.S.C. § 2254(b)(2), except for  Claims 20-26, for which there is absolutely no mention in Steen's state appeal and clearly have been procedurally defaulted.   See, e.g., McGehee v. Norris, 588 F.3d 1185, 1198 n.3 (8th Cir. 2009) (resolving an arguably procedurally-defaulted claim on the merits); Johnson v. Pollard, 559 F.3d 746, 752 (7th Cir. 2009) (same).

      Before turning to the individual claims, some discussion regarding the law applying to claims of ineffective assistance of counsel is necessary.

---

    [4]  What creates the uncertainty is that Steen did list in his state appeal brief a number of issues that could be characterized as freestanding claims of constitutional violation if considered separately, and  his state appeal was from both the judgment of conviction and from the denial of his petition for post-conviction relief.  The presentation of his claims in his state appeal brief, however, was more muddled than what it is here.  In his state appeal brief, Steen listed the issues claiming direct constitutional violations intermixed with the claims alleging ineffective assistance and under two general headings that stated the trial court had erred in denying his petition for post-conviction relief, which the North Dakota Supreme Court construed as raising only claims of ineffective assistance.

**B.     Law governing habeas claims of ineffective assistance of counsel**

Under Strickland v. Washington, 466 U.S. 668 (1984), a defendant who claims ineffectiveness of counsel must ordinarily demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defendant.[5]  The test for deficient performance under the "first Strickland prong" is whether counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.  Strickland, 466 U.S. at 688; Rompilla v. Beard, 545 U.S. 374, 380 (2005); Pfau v. Ault, 409 F.3d 933, 939 (8th Cir. 2005).  In making this determination, a state or federal court must:

> "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, 104 S.Ct. at 2066, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689, 104 S.Ct. at 2065.

Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995).

When the issue involves a matter of trial strategy, there is a strong presumption that the strategy was sound and was not ineffective assistance.  Bell v. Cone, 535 U.S. at  698; Williams v. Bowersox, 340 F.3d 667, 672 (8th Cir. 2003).  Likewise, the same holds true in judging trial counsel's performance with respect to claims of inadequate investigation. Rompilla, ("In judging the defense's investigation . . . hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made . . . and by giving a 'heavy measure of deference to counsel's judgments.'") (quoting Strickland , 466 U.S. at 689, 691).  A state court's

---

[5]  There are three situations in which a Sixth Amendment violation may be presumed without consideration of the "performance" and "prejudice" components of Strickland: (1) when the accused is actually or constructively denied counsel during a critical stage of the criminal proceeding, (2) when counsel fails to subject the government's case to a meaningful adversarial testing, which failure must be complete and not limited to isolated portions of the proceeding, or (3) when circumstances are present that even competent counsel could not render effective assistance.  E.g., Bell v. Cone, 535 U.S. at 695-697; United States v. White, 341 F.3d 673, 677-679 (8th Cir. 2003).

determination that a claimed error was a strategic decision by counsel is treated as factual finding for purposes of federal habeas review.  See Wood v. Allen, __ U.S. __, 130 S.Ct. 841, 849 (2010).

Under the "second Strickland prong," prejudice is only shown when "there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." E.g., Woodford v. Visciotti, 537 U.S. at 22 (quoting Strickland, 466 U.S. at 694 and adding emphasis); Perry v. Kemna, 356 F.3d 880, 888 (8th Cir. 2004).  "A reasonable probability is a probability sufficient to undermine the confidence in the outcome."  Woodford v. Visciotti, 537 U.S. at 23 (quoting Strickland, 466 U.S. at 694).

When a state court has addressed a petitioner's ineffective-assistance claims on the merits and applied the Strickland tests, the federal courts must accord the state court's determination the deference required by 28 U.S.C. § 2254(d).  Rompilla, 545 U.S. at 380.  Assuming there are no issues with respect to the state court's findings of fact, the federal court's review is limited to the determination of whether the habeas petitioner has met the burden of proving that "the state court applied Strickland to the facts of the case in an objectively unreasonable manner." Woodford, 537 U.S. at 25; see also Rompilla, 545 U.S. at 380.  Most recently, the Supreme Court has characterized the application of the Strickland standard through the prism of AEDPA as amounting to a "doubly deferential" standard of review.  Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1420 (2009).

**C.      Claims 1-4 relating to claimed Fourth Amendment violations**

      **1.      Introduction**

In his consolidated appeal brief to the North Dakota Supreme Court, Steen argued that the

bench warrants for failures to appear that the arresting officers claimed they were executing when

they arrested Steen were a fiction and that  the warrant for his failure to appear on earlier charges

was issued two days after his arrest.  Steen argued that, as a consequence, his arrest was unlawful

and that all of the fruits of his unlawful arrest, including the evidence from the subsequent search,

should have been suppressed. The State then filed a "supplemental brief" and attached to it copies

of three earlier bench warrants.  Steen objected to the supplementation of the record and moved to

strike the filing, but the North Dakota Supreme Court denied his motion.  (Exs. 12, 12C, 13A, &

13B).

      The North Dakota Supreme Court then disposed of Steen's ineffective assistance of counsel

claims related to the alleged Fourth Amendment violations as follows:

> [¶ 2] On January 16, 2002, Deputy Dan Wentz of the Burleigh County
> Sheriff's Office was attempting to serve civil papers upon Randal Steen and was
> informed that Steen was staying in Room 55 at the NoDak Motel in Bismarck. Wentz
> contacted Deputy Brad Banker of the criminal warrants division, who told Wentz
> there were outstanding warrants on Steen. After contacting the motel manager to
> confirm that Steen was registered in Room 55, Wentz, Banker, and Deputy Charlene
> Schuh went to the motel. Banker knocked on the door, and there was noise from
> inside the room. Steen eventually opened the door, and the officers entered. Banker
> told Steen that they had warrants for his arrest, and Steen was handcuffed.
> [¶ 3] The officers noticed what appeared to be drugs and paraphernalia in the
> room, and they asked Steen for permission to search. When Steen declined, Banker
> contacted Captain Collin Rixen in the warrants division of the Burleigh County
> Sheriff's Office. Rixen and an assistant state's attorney secured a search warrant from
> the district court. The resulting search produced additional drugs and paraphernalia.
> * * * *
> [¶ 10] Steen claims that his trial counsel was deficient in failing to challenge
> Steen's arrest and the search of the motel room because the arrest warrant for Steen

21

was not issued until January 18, 2002, two days after Steen's arrest. Steen's argument is based upon a faulty interpretation of the facts.

[¶ 11] Steen correctly notes that an arrest warrant was issued for him on January 18, 2002, two days after the arrest and search at the NoDak Motel. He asserts that the officers therefore had no basis to arrest him on January 16, and his trial counsel was deficient in not challenging the search resulting from the arrest.

[¶ 12] The arrest warrant of January 18 was issued in conjunction with a criminal complaint, filed the same day, charging Steen under N.D.C.C. § 12.1-08-05 with three counts of failure to appear. The January 18 complaint charged Steen with failure to appear at a January 14, 2002, revocation hearing for criminal mischief; failure to appear at a January 7, 2002, pretrial conference on a DUI charge; and failure to appear on January 8, 2002, for his scheduled jury trial on charges of possession of stolen property, altering a serial or identification number of a motor vehicle, displaying fictitious license plates, and possession of drug paraphernalia. In other words, in the ten days leading up to his January 16, 2002, arrest, Steen had allegedly failed to appear for three separate court proceedings. It was the bench warrants resulting from his prior failures to appear, not the January 18 warrant issued when Steen was separately charged with the crime of failure to appear, which the officers executed on January 16.

[¶ 13] Rule 6.6, N.D.R.Ct., authorizes issuance of a bench warrant when a person fails to appear in court when required:

> Whenever a person fails to appear in court as duly required by an order to show cause, subpoena, or other process, the judge, upon being satisfied of the failure to appear, may order the clerk to issue a bench warrant directed to all peace officers of this state to bring the person before the court immediately or at a time and place therein specified. The warrant may be served by any peace officer in any county of this state in the same manner as an arrest warrant.

[¶ 14] The record contains testimony from the officers involved that there were existing warrants for Steen's arrest on January 16, 2002. At the post-conviction evidentiary hearing, Steen's trial counsel testified there were outstanding bench warrants for Steen's arrest and he believed it would have been futile to move to suppress the evidence obtained in the subsequent search.

[¶ 15] We conclude the trial court did not err in determining that trial counsel's failure to move to suppress evidence did not constitute ineffective assistance of counsel.

State v. Steen, 2004 ND 228 at ¶¶ 2-3 & 10-15.

## 2.      Claims 1 & 4 -  Fourth Amendment claims

In Claims 1 & 4, Steen appears to allege freestanding claims for violations of the Fourth Amendment premised upon the alleged unlawful arrest and subsequent search of his motel room. While he continues to claim that the bench warrants were a fiction, he also argues that the bench warrants filed by the State with the North Dakota Supreme Court at the eleventh hour were neither operative at the time of his arrest nor otherwise sufficient to support his arrest and the subsequent search.

In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held  that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. at 482.  Under the Court's holding in Stone, a state court's disposition of a Fourth Amendment claim is barred from federal habeas review unless: (1) "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim;" or (2) "the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994).  A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process" under Willett. Chavez v. Weber, 497 F.3d 796, 802 (8th Cir. 2007).

In this case, Steen's counsel did not move to suppress the evidence obtained as a result of his  allegedly unlawful arrest and subsequent search of his motel room, and there is no basis for application of one of the exceptions to the bar raised by Stone v. Powell to federal habeas

consideration of these claims.[6]  Consequently, Steen's Fourth Amendment claims are <u>Stone</u> barred.[7]

Further, to the extent that Steen is under the impression that an illegal arrest is a defense to a valid

conviction, he is mistaken.  <u>E.g.</u>, <u>United States v. Crews</u>, 445 U.S. 463, 474 (1980); <u>Frisbie v.

Collins</u>, 342 U.S. 519, 522 (1952).

### 3.    Claims 2 & 3 - ineffective assistance of counsel related to alleged Fourth Amendment violations

In Claims 2 & 3, Steen asserts that his trial counsel was ineffective in not challenging the

legality of his arrest and moving to suppress the fruits of the subsequent search.  A review of the

state-court record, however, reveals there are facts supporting the North Dakota Supreme Court's

findings that (1) there were bench warrants outstanding at the time of Steen's arrest, and (2) Steen's

trial counsel reasonably believed a challenge to Steen's arrest would not be successful.  (Ex 7, pp.

36-37; Exs. 12D-12F; Ex. 24).   And, regardless of whether an "unreasonable" or "clear and

convincing" standard is used  for review of the findings, Steen has failed to sufficiently rebut them.[8]

That being the case, the North Dakota Supreme Court's denial of Steen's ineffective assistance

claims premised upon the alleged non-existence of an outstanding arrest warrant was not an

---

[6]  Steen also argues he was unfairly treated when the State was allowed to file the bench warrants after the briefing had been completed. Violations of state procedural rules, however, are not a basis for federal habeas relief. <u>See, e.g.</u>, <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Further, there can be no argument that allowing the bench warrants to be filed represented an unconscionable breakdown in the system because, among other things, the proper time to have challenged the legality of the arrest and subsequent search was at or before trial, which was not done, and the only issue considered by the  North Dakota Supreme Court was whether Steen's counsel was ineffective in failing to make the challenges.  Finally, the copies of the bench warrants filed by the State were not referenced by the court in its opinion, and the court appeared to rely upon other evidence as to their existence.  <u>State v. Steen</u>, 2004 ND 228 at ¶ 14.

[7]  Steen referenced <u>Stone v. Powell</u> in his response to the motion to dismiss, but proceeded to argue his freestanding Fourth Amendment claims nevertheless.  (Doc. No. 31, pp. 6-13).

[8]  In fact, there is sufficient supporting evidence even if the copies of the bench warrants submitted by the State are not considered.

unreasonable application of <u>Strickland</u>, *i.e.,* counsel was not ineffective in failing to make a challenge for which there appeared to be no reasonable likelihood of succeeding.[9]

**D.      Claims 5 & 6 -  related to Steen's appearance at trial in jail attire**

**1.      Claim 6 - "jail attire" Due Process claim**

The North Dakota Supreme Court found that Steen appeared for trial in jail clothing on both days of his two-day trial.  According to the court, he appeared on the first day in an  orange jump suit with the words "Prison Inmate" on the back.  On the second day, he was in a black-and-white striped uniform with the lettering "Burleigh County Detention  Center" on the back.  <u>State v. Steen</u>, 2004 ND 228 at ¶ 17.  Steen alleges in Claim 6 that he was denied a fair trial by being required to appear at trial in jail clothing.

In <u>Estelle v. Williams</u>, 425 U.S. 501, 503-506 (1976), the Supreme Court held that compelling an accused to stand trial before a jury in readily identifiable jail attire violates the Fourteenth Amendment.  The Court went on to conclude, however, that the failure to object, "for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation."  <u>Id.</u> at 512-513; <u>see also</u> <u>Whitman v. Bartow</u>, 434 F.3d 968, 970-971 (7th Cir. 2006).

---

[9]  Steen made one other argument of ineffective assistance in his consolidated state appeal related to his arrest and the search of his room that was not specifically addressed by the North Dakota Supreme Court.  Steen argued that the arresting officers needed a search warrant to enter the motel room to effectuate his arrest and that his trial counsel was ineffective in failing to move to suppress the evidence derivatively obtained  from the unlawful entry. (Ex. 12A, pp. 7-15).  It does not appear that Steen makes the same argument here.  But, even if he does, it  fails given that the arresting officers had a sufficient basis for concluding that Steen was a resident and not just a visitor.  That being the case, an arrest warrant was all that was needed to enter the room for purposes of effectuating Steen's arrest  and a separate search warrant was not required.  <u>See</u>, <u>e.g.</u>, <u>Payton v. New York</u>, 445 U.S. 573, 602-603 (1980); <u>United States v. Junkman</u>, 160 F.3d 1191, 1193-1194 (8th Cir. 1998).  Consequently, the North Dakota Supreme Court's "catch all" denial of that claim was not an unreasonable application of <u>Strickland</u> in that there could have been no ineffective assistance or prejudice.

Here, it is undisputed that Steen's counsel failed to object to Steen's appearance in jail attire. In addition, the record is devoid of any evidence of compulsion that would have rendered an objection fruitless, *e.g.*, a court policy requiring nonbailed defendants to stand trial in jail attire even if an objection is made.  Id. at 510-512.  Under these circumstances,  Estelle makes clear there can be no freestanding claim for a violation of  Due Process or Equal Protection.

Steen attempts to distinguish his situation by arguing that he did not personally waive his due process right not to have to appear at trial in jail attire and that the trial judge was obligated to insure this right was protected absent an express and knowing waiver on his part.  The Court in Estelle, however, rejected these same arguments.  The Court held that the right not to appear before a jury in jail attire is not on par with the Due Process rights that require a knowing and intelligent waiver by the defendant personally (*e.g.*, the right to counsel), and that a waiver by counsel is sufficient. Id. at 512.  Consequently, Claim 6 fails on the merits.

### 2.      Claim 5 - "jail attire" ineffective assistance claim

In Claim 5, Steen argues that trial counsel's failure to object at trial to his appearance in jail attire constituted ineffective assistance.  The North Dakota Supreme Court disposed of this claim as follows:

> [¶ 16] Steen argues his trial counsel was deficient when he failed to object to Steen appearing at the jury trial wearing prison clothing and by failing to arrange for Steen to wear normal attire.
> [¶ 17] Steen was transported from the state penitentiary to the courthouse for his trial wearing an orange prison jumpsuit with the words "Prison Inmate" on the back. He remained in those clothes for the first day of trial. On the second day of trial he wore a black-and-white striped uniform with the words "Burleigh County Detention Center" on the back. Steen claims counsel's failure to arrange for other clothing and failure to formally object to proceeding with the trial with Steen in prison clothing was constitutionally deficient.
> [¶ 18] At the post-conviction hearing, Steen's trial counsel testified he was upset that Steen had been brought to the courthouse in prison clothing without other

clothes to change into at the courthouse. He further testified, however, that he discussed the situation with Steen before trial, they felt they could deal with it, and they decided to proceed with the scheduled trial.

[¶ 19] In order to prevail on his ineffective assistance of counsel claim, Steen must show not only that counsel's performance fell below an objective standard of reasonableness, but must also demonstrate prejudice by establishing "a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different." <u>McMorrow v. State</u>, 2003 ND 134, ¶ 10, 667 N.W.2d 577 (quoting <u>Syvertson v. State</u>, 2000 ND 185, ¶ 22, 620 N.W.2d 362). We have noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Heckelsmiller</u>, 2004 ND 191, ¶ 4, 687 N.W.2d 454 (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Unless counsel's error is so blatantly and obviously prejudicial that it would in all cases, regardless of the other evidence presented, create a reasonable probability of a different result, resolution of the prejudice issue will ordinarily require the post-conviction court to assess the prejudicial effect of counsel's alleged error within the context of the overall conduct of the trial and the evidence presented at trial. The Supreme Court of the United States has concluded that a defendant's appearance at trial in prison attire does not automatically vitiate a conviction, recognizing that there may be valid tactical reasons for the defendant to prefer the prison attire. <u>Estelle v. Williams</u>, 425 U.S. 501, 507-08, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

[¶ 20] In this case, the post-conviction court's ability to assess the prejudicial effect of Steen's attire was hampered by Steen's failure to provide a transcript of the trial to the court. The post-conviction court expressly noted that it had not been provided a transcript or other record of the trial proceedings, and was "left with the pleadings of the petitioner and the evidence presented at the time of hearing as a basis for consideration of the petitioner's application." On the record before it, the post-conviction court did not err in concluding Steen had failed to establish that counsel's alleged errors were prejudicial or probably affected the result of the trial.FN1

> FN1. Our decision should not, however, be read as approving the appearance of criminal defendants in obvious prison clothing at a jury trial. <u>See</u> <u>Estelle</u>, 425 U.S. at 504-09, 96 S.Ct. 1691 (criminal defendant may not be compelled to appear at a jury trial in prison attire, but may waive the right by failing to object); <u>see also</u> <u>State v. Hendrick</u>, 164 N.W.2d 57, 59-62 (N.D.1969).

<u>State v. Steen</u>, 2004 ND 228 at ¶¶ 16-20.

It is undisputed here that Steen's post-conviction counsel failed to file the trial transcript with the district court as part of the post-conviction proceeding docket.  At the conclusion of the post-

conviction hearing on December 19, 2003, the following exchange took place between the court and

Steen's counsel:

| | |
|---|---|
| THE COURT: | Counsel, do you intend to file with the court a transcript of the trial? |
| [COUNSEL]: | I thought the transcript was filed already, Your Honor. |
| THE COURT : | Not in this proceeding. |
| [COUNSEL]: | I thought it was filed.  My mistake.  I guess I would ask for leave of court to make sure the official transcript - - I'll have the transcript over on Monday for the court if that would be okay. |
| THE COURT: | Thank you.  Nothing further in this matter, I'm going to take the petition under advisement.  Once I see the transcript, I'll address the issues and try to move this matter along.  It has been pending for quite some time. |

(Ex. 7, pp. 38-39).  Then, as discussed earlier, counsel not only failed to file the transcript when he

stated he would, he also failed to file the transcript when he subsequently moved for reconsideration

of the court's order denying the first petition for post-conviction relief, even though the district court

in its order discussed the insufficiency of the proof of prejudice in the context of the absence of the

trial transcript.

Steen argues here that a trial transcript was not necessary because the judge who considered

his post-conviction relief petition was the same judge who tried the case.  However, it would be

unreasonable to expect that the judge would have been able to resolve the issue of prejudice fairly

without a transcript, particularly in this case since the hearing on the petition was some fourteen

months after the trial.

Steen also argues that he was not required to prove prejudice, claiming that the Cronic exception to Strickland applies, *i.e.*, he is entitled to relief  without the necessity of proof of prejudice because his trial counsel was totally incompetent and failed to subject "the prosecution's case to meaningful adversarial testing."  United States v. Cronic, 466 U.S. 648, 659 (1984); see generally Bell v. Cone, 535 U.S. at 695-696.  The Cronic exception clearly does not apply in this case, however.  As outlined earlier in the background section, Steen's counsel developed a plan for defending the case and followed it by highlighting the weaknesses of the State's case, particularly with respect to the manufacturing count, in his cross-examination of the State's witnesses and in final argument.  Further, a review of the trial transcript reveals a number of instances where counsel objected to the wording of jury instructions, made evidentiary objections including questioning witnesses for purposes of making objections, and moved for dismissal of the State's case.  (See for example Ex. 4, pp. 5, 6-8, 65, 79-80, 108-108, 113-114, 129-138, 172, 248-254). While it may be possible, particularly with hindsight, to question certain decisions that Steen's counsel made, there was not a complete denial of counsel.

Based on the foregoing history, as unfortunate as it is with respect to the failure of post-conviction counsel to file the trial transcript, the North Dakota Supreme Court's conclusion that Steen failed to satisfy the second Strickland prong was neither directly contrary to, nor an unreasonable application of Strickland given Strickland's command that claims of ineffective assistance must be considered in light of the totality of the evidence in order to determine whether, but for the claimed deficiency, there is a reasonable probability the outcome would have been

different.  See, e.g., Strickland v. Washington, 466 U.S. at 698; Armstrong v. Kemna, 590 F.3d 592, 596 (8th Cir. 2010).[10]

Further, the result is the same if the failure to file the transcript is viewed as a procedural default.  This is because ineffective assistance of post-conviction counsel is not sufficient "cause" for excusing a procedural default.  E.g., Storey v. Roper, 603 F.3d 507, 524 (8th Cir. 2010); Wooten v. Norris, 578 F.3d 767, 784-785 (8th Cir. 2009).

### E.    Claims 7 through 18

#### 1.    Claims 7, 9, 11, 13, 15, and 17 alleging ineffective assistance

In Claims 7, 9, 11, 13, 15, and 17, Steen makes additional claims of  ineffective assistance based on his trial counsel's failure to object to certain evidence, failure to object to the seating of two jurors, failure to call witnesses on his behalf, failure to address alleged violations of Miranda, and failure to object to the prosecutor's alleged inappropriate comments to the jury.  These claims appear to have been covered by the North Dakota's Supreme Court's catch-all dismissal of the remaining claims of ineffective assistance as lacking merit.  And, while not specifically discussed, these claims suffered from the same defect as Steen's "jail attire" claim of ineffective assistance, i.e.,

---

[10]    Respondent also argues that North Dakota Supreme Court found, based on the testimony presented by counsel at the post-conviction evidentiary hearing, that counsel had discussed with Steen the problem of his appearing at trial and that a decision was made to proceed, notwithstanding, based upon a belief that the problem could be dealt with during trial. From this, Respondent argues that trial counsel's decision not to object was a "tactical one" not amounting to ineffective assistance, and that Steen failed to satisfy the first Strickland prong.  However, it is not at all clear that the North Dakota Supreme Court adopted trial counsel's testimony, which Steen contests, as opposed to simply summarizing what that testimony was.  Further, the court clearly did not rely upon trial counsel's testimony since it affirmed the trial court's dismissal of the "jail attire" ineffective assistance claim based upon the failure to satisfy the second Strickland prong, i.e., insufficient proof of prejudice.  Moreover, trial counsel's decision to simply "deal with" Steen's appearance in jail attire, despite claiming to be upset and troubled by it, could be viewed as simply an excuse for inaction and not a tactical decision, particularly since counsel did not articulate in his testimony during the post-conviction hearing what tactical advantage he expected to gain.  Cf. Wiggins v. Smith, 539 U.S. 510, 526-527 (2003); Kimmelman v. Morrison, 477 U.S. 365, 385-386 (1986).  In any event, there is no need to go beyond the North Dakota Supreme Court's denial of Steen's jail attire ineffective assistance claim based on the failure to satisfy the second Strickland prong.

30

his failure to provide sufficient proof of prejudice because of the failure to file the trial transcript. Consequently, these claims fail for the same reasons articulated above for Steen's "jail attire" claim. Also, as discussed below, a number of the claims fail because there was no underlying constitutional violation.

### 2.      Claims 8, 10, 12, 14, and 18 alleging Due Process violations

In Claims 8, 10, 12, 14, and 18, Steen alleges freestanding claims of constitutional violation that correspond to Claims 7, 9, 11, 13, 15, and 17 alleging ineffective assistance.  One or more of the claims, however, are simply restated claims of ineffective assistance that have already been addressed above. As for the others, there is no evidence that Steen's attorney either raised an objection or attempted to take action that was overruled or impeded by the trial court and, arguably, have been waived as a consequence.  Cf. Estelle v. Williams, 425 U.S. at 503-506.

Steen argues in Claim 14 that he was denied due process and a fair trial because of his counsel's failure to call any witnesses.  This claim, however, does not rely upon any matter external to the defense and is simply a restatement Claim 13 for ineffective assistance, which has already been addressed.

In Claim 10, Steen argues he was denied a fair trial because, according to him, all of the physical evidence submitted for examination at the State's laboratory was contaminated when a lab analyst dropped a piece of evidence releasing fumes and requiring that the lab be aired out.  Steen offers nothing, however, other than mere speculation, that contamination occurred.  For example, there is nothing in the testimony of the lab analyst to support such a finding.  (Ex. 4, pp. 222-247).  Hence, this claim fails on the merits for lack of proof.

Steen argues in Claim 12 that he was denied a fair trial because two of the jurors did not want to be inconvenienced with jury service.  But, in terms of proof, the only thing Steen offers are the remarks by the court at the conclusion of the trial thanking the jury that  included a reference to the two jurors who, apparently, had expressed reluctance to serve.  This falls far short of proving actual juror misconduct.  Further, the fact that the jury unanimously returned a verdict on all four counts in less than 1 ½ hours belies this claim.  Claim 12 fails also on the merits for lack of proof.

Steen argues in Claim 16 that the State elicited a testimonial gesture from him during the search of the motel room while he was handcuffed  in violation of Miranda that was subsequently used at trial.  More specifically, the officers inquired of Steen as to whether there was hazardous material in the room.  Steen eventually pointed to some clothing beneath which were located a number of the items used for manufacturing meth.  This inquiry, however, fell within the "public safety" exception to Miranda, given the objectively reasonable indicia of drug activity.  Thus, the use of testimony of the gesture at trial was not prohibited, even it is assumed that Steen was not given his Miranda warnings.  E.g., New York v. Quarles, 467 U.S. 649, 654-657 (1984); United States v. Liddel, 517 F.3d 1007, 1008-1010 (8th Cir. 2008).  Hence, Claim 16 fails because there was no constitutional violation.

In Claim 18, Steen alleges that the prosecutor inappropriately stated on several occasions during the trial that the motel room where he was arrested was registered to him.  While Steen appears to be correct about the lack of direct evidence proving the room was registered in his name, there was testimony that the officers checked with the motel prior to proceeding there and were told Steen was staying in Room 55.  This confirmed what they had been told by Steen's daughter-in-

32

law.[11]  (Ex. 4, p. 31).   Further, no one else was found in the room when the officers arrived, one of

two beds in the room was unmade, and it appeared Steen had been sleeping in the unmade bed given

his partial state of undress and the fact he retreated there to put on his pants.  (Ex. 4, pp. 28, 37, 52,

66-67, 144, 156).

Under the circumstances, the statements describing Steen as the registrant were not an

impermissible, much less egregious, characterization of the circumstantial evidence.   Moreover,

given the uncontested evidence pointing to Steen being a resident, if not the actual registrant, Steen

is unable to demonstrate the outcome of the trial would likely have been different absent the remarks

about the registration.  See Stringer v. Hedgepeth, 280 F.3d 826, 829 (8th Cir. 2002) (discussing the

burden required to prove prejudice for objectionable remarks by the prosecution);  Robert v.

Bowersox, 137 F.3d 1062, 1066 (8th Cir. 1998) (same).  Consequently, Claim 18 fails because of

insufficient proof of prosecutorial misconduct and because of the failure to prove  prejudice.

In Claim 8, Steen argues that he was denied a fair trial because of the testimony elicited by

the State from several witnesses that there were numerous outstanding warrants for his arrest along

with other references to that fact by the prosecutor.  Even if it is assumed that the prosecution

crossed the line in offering this evidence, Steen has failed to prove the outcome probably would have

been different but for these references.

Here, the evidence with respect to the possession charges was overwhelming given the fact

Steen was found alone in the motel room with a  mountain of drug evidence,  the evidence that Steen

was a resident and not a mere visitor, and the evidence of Steen's awareness of the presence of the

---

[11]  Respondent claims there was record evidence of registration pointing to the following question by the
prosecutor:  "After confirming that Mr. Steen was in fact registered at the NoDak Motel, were you able to determine
which room he was located in?"  However, as the court instructed the jury, assertions of fact in questions by counsel are
not by themselves evidence.  (Ex. 28, p.8).

drug paraphernalia.  And, while the  evidence with respect to the manufacturing count was not as compelling, it was still strong for several reasons.  First, the meth-making equipment had obviously been used.  Second, Steen's possession of the equipment strongly suggested his involvement in manufacturing given the commonsense notion that persons are unlikely to possess such items unless they intend to use them for manufacturing purposes, given that mere possession of such items will land a person in jail.   Third, faced with the highly incriminating circumstantial evidence, Steen produced little in the way of affirmative evidence, *e.g.,* his own or third-person testimony, suggesting a reasonable alternative to the jury's logical conclusion he had been involved in manufacturing.

Given the foregoing, it cannot be concluded that the result, more likely than not, would have been different in this case, even with respect to the manufacturing count, had there been no mention of the numerous outstanding warrants. In fact, Steen's counsel testified at the post-conviction hearing that he believed that mention of the outstanding bench warrants was of benefit to Steen because they were all for failures to appear in court and that this was a more innocuous explanation for why the officers were  at Steen's door than what the jurors might have speculated about on their own absent such evidence.  (Ex. 7, p 25).

**F.      Claims 20 through 27 - claims that were procedurally defaulted**

In Claims 20 through 27, Steen makes several claims regarding the sufficiency of the evidence, alleged errors of law in the jury instructions, and that he was compelled to be a witness against himself by appearing in jail attire.  As the background section makes clear, these arguments were raised for the first time in Steen's second petition for post-conviction relief.  Tthe North Dakota Supreme Court dismissed them based upon the independent state-law grounds of res judicata and

misuse of process, which are codified at N.D.C.C. § 29-32.1-12(1)-(2) and are regularly enforced by the North Dakota courts.  E.g., Steen v. State, 2007 ND 123 at ¶¶ 13-17 (citing other cases); Laib v. State, 2005 ND 187, ¶¶ 6-7, 705 N.W.2d 845.  Consequently, the claims cannot be considered here  unless Steen can show cause and prejudice for the procedural default, or that a failure to consider the claims will result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. at 750.  In this case, Steen claims actual innocence, which is discussed next.

### G.      Claim 19 - actual innocence

As Steen acknowledged in his briefing, his claim of "actual innocence" is not a separate claim, but rather is gateway for consideration of the claims that have been procedurally defaulted. E.g., Shlup v. Delo, 513 U.S. 298, 315 (1995).  In order to make a claim of "actual innocence" sufficient to excuse a procedural default, Steen is required to come forward with new, reliable evidence that he was innocent of the crime of which he was convicted.  Id. at 327.

In this case, Steen's claim of proof of "actual innocence" is based upon the affidavits from his two sons and his girlfriend that he filed in support of his state-court motion for new trial. As outlined earlier, the essence of the affidavit testimony is that the drug evidence belonged to his oldest son and that it was brought into the room by his two sons while he was asleep and that he had nothing to do with it.  Among other things, however,  the problem with Steen's proof is that it is not new.  Rather, the evidence was both known and available at the time of trial.  Storey v. Roper, 603 F.3d at 525; Nance v. Norris, 392 F.3d 284, 291 (8th Cir. 2004). Consequently, his "actual innocence" claim fails.

### H.      Claim 28 - alleged ineffective assistance of trial, appellate, and post-conviction counsel

Any claim that Steen makes for ineffective assistance of trial counsel that has not been procedurally defaulted has already been covered. He also has no claim for ineffective assistance of appellate counsel because the state-court record makes clear that he represented himself in his consolidated appeal after he fired his appointed counsel. E.g., McKaskle v. Wiggens, 456 U.S. 168, 177 n.8 (1984); United States v. Brockman, 183 F.3d 891, 898 n.7 (8th Cir. 1999).

With respect to the claim of ineffective assistance of post-conviction counsel, Steen has a compelling case that counsel was ineffective. However, the United States Supreme Court has held there is no federal constitutional right to post-conviction counsel, and that absent such a right, there can be no federal constitutional claim for ineffective assistance. See, e.g., Coleman v. Thompson, 501 U.S. 722, 753-754 (1991). Further, this holding applies here even though: (1) the first opportunity that Steen had to litigate his ineffective assistance claims was in the civil proceeding for post-conviction relief, which was completed prior to his direct appeal; (2) the appeal from the denial of the petition for post-conviction relief was consolidated with his direct appeal; and (3) the same attorney represented him in both proceedings until he fired the attorney. See, e.g., Clay v. Bowersox, 367 F.3d 993, 1005-1006 (8th Cir. 2004); Lowe-Bey v. Groose, 28 F.3d 816, 820 (8th Cir.1994); Perry v. Steele, 2010 WL 427756, ** 8-9 (E.D. Mo. Feb. 1, 2010) (discussing Eighth Circuit cases).[12]

Finally, "state post-conviction counsel's errors cannot form the basis for the cause to excuse a procedural default." Storey v. Roper, 603 F.3d at 524 (citing Coleman v. Thompson, 501 U.S. at

---

[12] The North Dakota Supreme Court dismissed Steen's claim of ineffective assistance of post-conviction relief counsel on the grounds that Steen had told the district court considering the claim that a hearing was unnecessary because there were no fact issues to resolve and , as a consequence, Steen failed to carry his burden of proving prejudice. Steen v. State, 2007 ND 123 at ¶ 19-20. While it is not clear what a hearing would have accomplished, given the court's earlier determination of lack of proof of prejudice because of the failure to file the trial transcript, the court's decision with respect to this issue is not subject to review here given that any relief for ineffective assistance of post-conviction counsel would be a matter of state law.

755-757).  Thus, Claim 28 provides no basis for relief even if post-conviction counsel's failure to file the trial transcript was viewed as a  procedural default and not a failure to provide sufficient evidence of prejudice.

      **I.**      **Additional claims raised in Steen's response to the motion to dismiss**

Steen argues in his response to the motion to dismiss additional claims of malicious prosecution and prosecutorial vindictiveness that were not set forth in his § 2254 petition.  However, he has not moved to amend his petition and they can be ignored for this reason.  But, even if  Steen moved to amend his petition,  the court is precluded from granting the claims here  because they have not been exhausted and have now been procedurally defaulted at the state level based upon the state prohibition against misuse of process outlined earlier.

**IV.**      <u>**CERTIFICATE OF APPEALABILITY**</u>

Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  When the court has rejected a petitioner's claim on the merits, the substantial showing required is that the "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) <u>quoting</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>see also</u>, <u>United States v. Lambros</u>, 404 F.3d 1034, 1036 -1037 (8th Circ. 2005); <u>Garrett v. United States</u>, 211 F.3d 1075, 1076 -1077 (8th Cir. 2000).  When the court denies a petitioner's claim on procedural grounds without reaching the merits, the petitioner must demonstrate that reasonable jurists would find it debatable that a valid claim for the denial of constitutional rights has been stated and that the district court was correct in its procedural ruling. <u>Slack</u>, 529 U.S. at 484.

In this case, reasonable jurists would not find debatable the recommended dispositions of the claims, whether on the merits or on procedural grounds.  Consequently, it is recommended that the court not issue a certificate of appealability.

## V.    RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS**:

1.      Respondent's Motion to Dismiss (Doc. No. 20) be **GRANTED**;

2.      Steen's  Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1) be **DENIED**;

3.      The court certify that an appeal from the denial of this action may not be taken in forma pauperis because such an appeal would be frivolous and cannot be taken in good faith; and

4.       A certificate of appealability not be issued.

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 20th day of August, 2010.


*/s/  Charles S. Miller, Jr.*
Charles S. Miller, Jr.
United States Magistrate Judge